Pedro L. RAMOS–ECHEVARRÍA, et al., Plaintiff(s),

v.

PICHIS, INC. d/b/a Pichis Hotel and Convention Center, et al., Defendant(s).

Civil No. 06–2180 (DRD).

United States District Court, D. Puerto Rico.

March 22, 2010.

9. The respective motions for summary judgment are herein considered moot and no in-depth examination is required.

263

Juan Ramon Rodriguez–Lopez, Rodriguez Lopez Law Office, Ponce, PR, for Plaintiff(s).

Martha L. Martinez–Rodriguez, Manuel A. Nunez Law Office, San Juan, PR, for Defendant(s).

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are the following motions: (a) *Defendant's Motion For Summary Judgment And Memorandum Of Law In Support Thereof* (Docket No. 24) of plaintiffs' complaint under the American with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); Title VII [42 U.S.C. § 2000e (2000) ]; 42 U.S.C. § 1983; Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142; "the Puerto Rico Law against discrimination;" (Docket No. 1, ¶¶ 1–3); and "violation to the Commonwealth of Puerto Rico Labor Laws and Federal Labor Laws" (Docket No. 1, ¶¶ 1–3); and (b) plaintiffs' *Response In Opposition For Summary Judgment* (Docket No. 31). The matter was referred to the United States Magistrate Judge López ("Magistrate Judge") for report and recommendation (Docket entries No. 41 and 42).

The Magistrate Judge entered a *Report and Recommendation* (Docket No. 55), wherein he recommended that defendant's motion for summary judgment be granted with prejudice as to the claims under the ADA; the claims under Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983; any and all remaining federal claims should be dismissed with prejudice. Finally, all state claims were recommended to be dismissed without prejudice. *See* Docket No. 55, page 16. The Magistrate Judge granted the parties ten (10) days to object. *See* Docket No. 55. The record shows that plaintiffs filed a timely objection to the *Report and Recommendation. See* Docket No. 59. Defendant's moved timely for

leave to reply, which was granted. *See* Docket entries No. 60 and 76. The undersigned further inquired from plaintiffs certain specific information, such as, a copy of the Right to Sue Letter, as well as proof of Ramos–Echevarría's receipt of the EEOC letter for procedural purposes. *See* Docket entries No. 61–71. For the reasons set forth below, the *Report and Recommendation* issued by the Magistrate Judge is hereby adopted *in toto*, except as clarified and supplemented herein.

### Standard of Review

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); Rule 72 of the Local Rules for the District of Puerto Rico ("Local Rules"). *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). As a general rule, an adversely affected party may contest the Magistrate Judge's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72; Fed.R.Civ.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in its pertinent part, provides that:

Within ten days [1] of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

---

1. The Court is mindful that effective December 1, 2009, the ten day period to object to a report and recommendation has been amended to fourteen days. The new amendment, however, is not applicable to the instant case, as the *Report and Recommendation* (Docket No. 55), 2009 WL 50146, was entered on January 8, 2009.

However, "[a]bsent objection by the plaintiffs, [a] district court ha[s] a right to assume that [a party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994) (holding that specific objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). *See generally United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980). **Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected.** *See Borden v. Secretary of H.H.S.*, 836 F.2d at 6. The Court, therefore proceeds, as the *Report and Recommendation* has been objected, to review the *Report and Recommendation* of the Magistrate Judge *de novo*, as to those parts that have been objected. *Borden v. Secretary of H.H.S., supra.*

### The Summary Judgment Standard

Generally, "[s]ummary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material·fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).'" *Richardson v. Friendly Ice Cream Corporation*, 594 F.3d 69, 74 (1st Cir.2010). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Coca–Cola, Co.*, 522 F.3d 168, 175 (1st Cir.2008); *Rodríguez–Rivera, et al. v. Federico Trilla Regional Hospital of Carolina, et al.*, 532 F.3d 28, 30 (1st Cir.2008). "The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación de Puerto Rico Para La Difusión Pública*, 498 F.3d 9, 12 (1st Cir.2007), citing from *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir.2004) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). In *Dávila*, the Circuit Court held:

> For this purpose, an issue is genuine if a reasonable jury could resolve the point in favor of the nonmoving party. *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000). By like token, a fact is material if it has the potential to determine the outcome of the litigation. *See Calvi v. Knox County*, 470 F.3d 422, 426 (1st Cir.2006). Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues·in the case "is … not significantly probative, summary judgment may be granted." *Acosta*, 386 F.3d at 8 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

When reviewing *de novo*, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Noviello v. City of*

*Boston,* 398 F.3d 76, 84 (1st Cir.2005), citing *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004). *See also Richardson v. Friendly Ice Cream Corporation,* 594 F.3d at 74. "[T]he nonmovant bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Noviello,* 398 F.3d at 84, citing *Mulvihill v. Top–Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir.2003). *See also, Dávila,* 498 F.3d 9. "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, '[e]vidence that is inadmissible at trial, such as, inadmissible hearsay, may not be considered on summary judgment.'" *Noviello,* 398 F.3d at 84, citing *Vázquez v. López–Rosario,* 134 F.3d 28, 33 (1st Cir.1998); *accord Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). "The evidence presented by the non-moving party may not be 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" *Torres–Negrón v. Merck & Company, Inc., et al.,* 488 F.3d 34, 39 (1st Cir.2007), citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Based on these premises, the Court proceeds with the analysis.

## Analysis

This is a case under the ADA and Title VII, 42 U.S.C. § 2000e (2000); 42 U.S.C. § 1983, wherein an employee, plaintiff Pedro L. Ramos–Echevarría (hereinafter "Ramos–Echevarría"), claims discriminatory treatment by his employer, defendant Pichis, Inc. d/b/a Pichis Hotel and Convention Center (hereinafter "Pichis"). In a nutshell, Ramos–Echevarría alleges that he has not been considered for a full time position because he suffers from epilepsy.

## Disability under the American with Disabilities Act

Pursuant to the provisions of the ADA, disability of an individual is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A) (1990). "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, 29 C.F.R. § 1630.2(i) (1991). The ADA's definition of disability also accepts an individual "being regarded [by the employer] as having such an impairment." 42 U.S.C. § 12102(2)(C).

When considering a question of physical disability under the ADA, the Court will examine whether the plaintiff has established his or her discrimination claim under the ADA on physical disability grounds. The Court finds that *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511–514 (1st Cir.1996), illustrates the three separate and independent options available to plaintiff to show discrimination for physical disability under the ADA provisions:

> The ADA is a federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)....

> ...

> To establish a claim of disability discrimination under the ADA, a plaintiff must prove three things by a preponderance of the evidence:

> > First, that he [or she] was disabled within the meaning of the Act. Second, that with or without reasonable accommodation he [or she] was able to perform the essential functions of [the] job. And, third, that the employer discharged him [or her] in whole or in part because of his [or her] disability.

*Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 (1st Cir.1996). [Second] A plaintiff may also indirectly prove his or her case

"by using the *prima facie* case and burden shifting methods that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* n. 2 (citations omitted); *see Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 162–63 (5th Cir.1996) (citations omitted). Under the *McDonnell Douglas* analysis, a plaintiff must first prove by a preponderance of the evidence that he or she (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result. *See Taylor*, 93 F.3d at 162–63.

The third option is provided by 42 U.S.C. § 12102(2)(C) (1990), under the definition of disability as to an individual, "being regarded as having such an impairment." In *Taylor*, 93 F.3d at 164, the Court held that:

**For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities.**

. . .

Accordingly, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom.

. . .

If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one. (Emphasis ours).

*See also Jacques v. Clean–Up Group, Inc.*, 96 F.3d at 513–514.

Although the ADA provisions do not provide a definition of the term impairment, one can be found in its regulations. 29 C.F.R. § 1630.2(h)(1) and (2) provides:

(h) Physical or mental impairment means:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

To determine whether plaintiff has an actual disability, plaintiff must: (a) "initially prove that he or she has a physical or mental impairment;" [42 U.S.C. § 12102(2)(A)]; (b) "demonstrate that the impairment limits a major life activity;" [42 U.S.C. § 12102(2)(A) (1994 ed.)]; and (c) "show that the limitation on the major life activity is 'substantia[l];'" [42 U.S.C. § 12102(2)(A)]. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 194–195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).[2]

**2.** The Court is cognizant that *Toyota, supra,* was legislatively recalled by the 2008 ADA Amendments Act, effective January 1, 2009. As discussed below, the Court finds that the 2008 ADA Amendments Act is not applicable to the instant case, as said amendments cannot be applied retroactively. The Court considers that a retroactive application would constitute a gross inequity as the operative facts occurred years prior to the amendments of the law. Hence, the test set forth by the

In *Arnold v. United Parcel Service, Inc.,* 136 F.3d 854, 860–861 (1st Cir.1998), the Court referred to the legislative history of the ADA for enlightenment when determining whether an individual has a disability under the ADA provisions.

Indeed, Congress spoke directly to the medical condition at issue in this case [diabetis]: "persons with impairments, such as **epilepsy** or diabetes, **which substantially limit a major life activity,"** are considered to have an actual disability, "even if the effects of the impairment are controlled by medication." House Labor Report at 52 [H.R.Rep. No. 101–485, pt. II, at 52 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 334 ("House Labor Report")]. Senate Report at 22 (same) [S.Rep. No. 101–116, at 23 (1989) ("Senate Report")].

. . .

Another important goal of the third prong of the [disability] definition is to ensure that persons with medical conditions that are under control, and that therefore do not currently limit major life activities, are not discriminated against on the basis of their medical conditions. For example, **individuals with controlled diabetes or epilepsy are often denied jobs for which they are qualified.** Such denials are the result of negative attitudes and misinformation.

. . .

The fundamental purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)

(1994). In the context of employment discrimination, the thrust of this purpose is essentially to protect individuals who have an underlying medical condition or other limiting impairment, but who *are* in fact capable of doing the job, with or without the help of medications, prosthetic devices, or other ameliorative measures, and with or without a reasonable accommodation by the employer. *See, e.g.,* 42 U.S.C. § 12101(a)(7). (Emphasis ours).

■ Although it is settled that "having an impairment does not make one disabled for the purposes of the ADA," plaintiff must show that said impairment limits a major life activity. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Generally, a "major life activity" are "those activities that are of central importance to daily life." *Toyota,* 534 U.S. at 197, 122 S.Ct. 681. Work could be considered a "major life activity." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).[3] "In *Sutton,* we noted that even assuming that working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota,* 534 U.S. at 200, 122 S.Ct. 681, citing *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. "But *Sutton* did not suggest that a class-based analysis should be applied to any major life activity other than working. Nor do the EEOC regulations." *Toyota,* 534 U.S. at 200, 122 S.Ct. 681.

Court in *Toyota,* is applicable to the instant factual scenario.

**3.** The Court is cognizant that *Sutton, supra,* was also legislatively recalled by the 2008 ADA Amendments Act, effective January 1, 2009. As discussed below, the Court finds that the 2008 ADA Amendments Act is not

applicable to the instant case, as said amendments cannot be applied retroactively, and most critically, the operative facts occurred years prior to the enactment of the amendments. Hence, the test set forth by the Court in *Sutton,* is applicable to the instant factual scenario.

In *Bragdon v. Abbott,* 524 U.S. 624, 638–639, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court interpreted the term of a qualifying "major life activity" in a patient with the condition of HIV. Bragdon filed suit against dentist who refused to treat her at his office. The Supreme Court eventually held that:

> As we have noted, the ADA must be construed to be consistent with regulations issued to implement the Rehabilitation Act. See 42 U.S.C. § 12201(a). Rather than enunciating a general principle for determining what is and is not a major life activity, the Rehabilitation Act regulations instead provide a representative list, defining the term to include **"functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."** 45 C.F.R. § 84.3(j)(2)(ii) (1997); 28 C.F.R. § 41.31(b)(2) (1997). **As the use of the term "such as" confirms, the list is illustrative, not exhaustive.** (Emphasis ours).

524 U.S. at pages 638–639, 118 S.Ct. 2196.

■ "The threshold question in any ADA action is whether the plaintiff can make a showing of disability." (Internal citations omitted). *See Report and Recommendation* (Docket No. 55, page 9). That is, that plaintiff is disabled within the meaning of the Act, and a resulting major life activity being substantially impaired. "To succeed in a disability discrimination case under the ADA, plaintiff must prove by a preponderance of the evidence: (1) that he is disabled within the meaning of the ADA; (2) that he is able to perform the essential functions of his job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on his disability. *Phelps v. Optima Health, Inc.,* 251 F.3d 21, 24 (1st Cir.2001); *García–Ayala v. Lederle Parenterals Inc.,* 212 F.3d 638, 646 (1st Cir.2000)." *See Report and Recommendation,* Docket No. 55, page 9). The Magistrate Judge determined that Ramos–Echevarría failed to make a showing of disability.

Plaintiff alleges that the Magistrate Judge erred on the following findings: (a) "plaintiff's description of his impairment does not identify a specific major life activity;" (b) "plaintiff's approximately sixteen (16) seizures per week results only in temporary disruption even thou [sic] that these seizures last from eight (8) to fifteen (15) seconds (unconscious) and that some of the seizures requires medical treatment and hospitalization;" (c) "the report fails to make any findings as to the extensive medical records submitted as exhibits in support of the plaintiff's allegations;" (d) the report fails to take into consideration the 2008 Amendments to the ADA when considering plaintiff's disability; (e) "plaintiff's condition constitute an identification of a major life activity, no reasonable fact finder could conclude that plaintiff is substantially limited in working."

Defendant's filed a *Reply to Plaintiff's Objection to Report and Recommendation* (Docket No. 60), basically alleging that plaintiffs failed to provide evidence showing that Ramos–Echevarría suffered "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," as mandated by 42 U.S.C. § 12102(2). Indeed, plaintiff's own testimony consistently affirms that he is able to work, notwithstanding his condition of epilepsy, and that his condition does not limit his work. *See* Docket No. 24, Plaintiff's April 18, 2008 deposition transcript at pages 8, 49, 60. Moreover, plaintiff is still working at Pichis; his working conditions are the same; his salary has increased, as provided by law, and plaintiff's relationship with his employer is "excellent," as they have al-

ways been since the first day of work. *See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript at page 63. The Court further notes that plaintiff does have another job at The Chinese Palace Restaurant, also at Ponce, Puerto Rico. *See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript at page 42. The job at The Chinese Palace complements his current employment at Pichis, which he also can fully comply with. *Id.* Plaintiff holds a part time position as kitchen assistant at Pichis. *See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript at page 51.

### Disability

As stated above, the Court reviews *de novo* the objections raised by plaintiffs. The Court, however, understands that the findings of fact made by the Magistrate Judge are uncontested, as plaintiffs' real contention is as to the analysis and recommendations made by the Magistrate Judge dismissing the ADA claim. Hence, for review purposes, the Court deems the findings of fact as uncontested by the parties. The Court hereby adopts and incorporates, the findings of fact made by the Magistrate Judge, *see Report and Recommendation* (Docket No. 55, pages 2–6). In any event, the facts of this case are straight forward.

Plaintiff is an individual who suffers from epilepsy. He was hired by defendant on July 15, 1999 (Docket No. 24, Exhibit No. 5, Employment Application), as a kitchen assistant.

During the first week of employment, plaintiff suffered an epilepsy episode, and the defendant requested plaintiff for a medical certificate in order to continue working. "The medical certificate states that plaintiff's epilepsy 'does not impede him from working,' but recommended that plaintiff 'should not drive automobiles' or 'go up to heights [sic] without protection.'" *See Report and Recommendation* (Docket

No. 55, page 3, and Docket No. 24, Exhibit No. 6, Certificate issued by Blas Anaya Amalbert, M.D.). As stated above, plaintiff is still working at Pichis,' and under the same working conditions when he was hired on July 15, 1999. Based on disability grounds, plaintiffs also seek damages under 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964; the ADA, as well as damages under Puerto Rico law.

On procedural grounds, the Court notes that the EEOC issued a "Notice of Right to Sue," which was **mailed** on August 23, 2006. *See* Docket No. 62, Exhibit 1. However, it is unknown from the record the date of Ramos–Echevarría's actual receipt of the August 23, 2006 EEOC letter. *See Motion In Compliance With Order (Docket No. 61); Motion In Compliance;* and *Motion In Compliance* filed by plaintiffs (Docket entries No. 62, 67, and 70). Hence, for purposes of this review, the Court will assume that the instant action is not time barred, *albeit* the issue is a close call for procedural purposes. The Court further finds that the end result of the controversy will be the same, as the instant action is dismissed on other grounds.

The Magistrate Judge found, and the Court agrees, that "plaintiff does not meet the burden of showing that he is disabled under the ADA because he does not identify any major life activity which is substantially impaired by his medical condition." *See Report and Recommendation* (Docket No. 55, page 12). *See also Toyota,* 534 U.S. at 197–199, 122 S.Ct. 681 ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment"). *Toyota,* at 198, 122 S.Ct. 681. "Plaintiff does not allege in his complaint, nor does he identify in his opposition to the motion for summary judgment, any specific major life activity affected by his epilepsy." *See Report and*

*Recommendation,* Docket No. 55, page 12. "Due to plaintiff's failure to identify the specific major life activity on which he relies, plaintiff cannot create a genuine issue of material fact as to substantial limitation of a major life activity." *Id.* "Furthermore, the only medical opinion that addresses plaintiff's limitations due to his epilepsy, [is] a handwritten note from Dr. Anaya, [that] **states that his condition does not impede him from working.**" *Id.,* at page 13. (Emphasis ours).

Moreover, plaintiff admitted in his deposition of April 18, 2008, that he has never applied for Social Security benefits on account of his condition of epilepsy. *See* Docket No. 24, Plaintiff's transcript deposition of April 18, 2008, page 18. Critically, when asked why he has not requested Social Security benefits, plaintiff replied: **"Because I feel capable of work. If the time ever comes when I feel disabled, and truly am [sic] unable to work, then I'll apply. But till such time, well, we go on working."** *Id.* (Emphasis ours). Plaintiff was also asked whether his condition limits his capacity to work, plaintiff replied that it does not. *See* Docket No. 24, Plaintiff's April 18, 2008 deposition transcript at pages 8, 49, 60. As to his medical record, plaintiff answered: "I have to keep a medical record to be able to ... Not a medical record, no, forgive me. A record for the doctor to see the, the seizure episodes that happened to me in a month. **That does not keep me from doing the work. I always do it.**" *Id.* at page 61. (Emphasis ours).

After a careful review of the record, the Court agrees with the findings and recommendations made by the Magistrate Judge. The Court further finds that the plaintiffs' objections on the issue of qualified individual and disability constitutes a rehash of plaintiffs' opposition to motion for summary judgment (Docket entries No. 31 and 34). Plaintiffs' objections simply do not reach the threshold required under *Toyota,* 534 U.S. at 197, 122 S.Ct. 681 (affecting plaintiff's major life activity in his work).

## Claims for Failure to Promote and other Discriminatory Treatment

█ Plaintiff Ramos–Echevarría further claims that Pichis has discriminated against him by failing to promote him. The record shows, however, that Ramos–Echevarría has not established that Pichis has denied plaintiff's request for a full time position, or that any adverse action has been taken against Ramos–Echevarría. Further, the Court finds that plaintiff Ramos–Echevarría does not reach the threshold of being disabled under the Act. Hence, the Court does not have to determine that he has not been promoted, or as to any other ADA related discriminatory employment allegation. *See Report and Recommendation,* Docket No. 55, page 14, n. 4. Moreover, the record shows that during the operative period of the case, business was slow at the dining room where plaintiff was assigned to work. *See* Docket No. 24, Plaintiff's April 18, 2008 deposition transcript at page 22. Indeed, Mr. Emmanuelli, the owner, would sometimes call to inquire the status of the restaurant, and if no customers, the employees were ordered to clean up and close the restaurant at an earlier hour. *See* Docket No. 24, Plaintiff's April 18, 2008 deposition transcript at page 22. In sum, that a full time position at the dining room that plaintiff was assigned to, was not warranted at the time, due to economic reasons which are completely unrelated to plaintiff's epilepsy impairment.

As to Pichis' offer to plaintiff to work an extra shift in another dining room of the convention center, plaintiff replied that he did not remember. The record shows that plaintiff first answered "yes" followed by

"No, I really don't remember." *See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript, page 92.

Attorney Céspedes–Sabater:

Q. Were you offered more hours at another location of Pichis, like another restaurant or cafeteria?

Plaintiff Ramos–Echevarría:

A. Within Pichis?

Q. Yes.

A. No, I really don't remember.

Plaintiff Ramos–Echevarría's answer of "No, I really don't remember" fails to comply with the threshold in the *McDonnell Douglas* context, that is, in discrimination claims, plaintiff carries the burden of "persuasion." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), citing *Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In view of the foregoing, the Court finds that plaintiff has failed to show that Pichis has not promoted him to a full time position at the dining room to which he is assigned to, due to his epilepsy impairment. The uncontested fact is, however, that Pichis offered Ramos–Echevarría more hours in another restaurant at the convention center, and plaintiff refused or "don't remember." *See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript, page 92. As stated above, the Court notes that plaintiff has a second job at The Chinese Palace. *See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript at page 42. Hence, plaintiff has failed to show any discriminatory action from the employer, as Pichis' offer for more hours of work shows that plaintiff is qualified to perform the tasks of kitchen assistant in other facilities at the convention center. Moreover, the record shows that Pichis was willing to accommodate plaintiff's request, notwithstanding his epilepsy impairment.

Plaintiff Ramos–Echevarría further alleges that he was excluded from a meeting held on September 15, 2005. When questioned as to why plaintiff was excluded from the September 15, 2005 meeting, plaintiff responded:

Yes, because there, they said the all the kitchen personnel would have a meeting—in the salon, dining room. And when I go to participate in the meeting, Mr. Emanuelli here present told me that I was not going to participate in the meeting, because there was going to be an activity, and that I should stay cutting up the chicken.

*See* Docket No. 24, Plaintiff's April 17, 2008 deposition transcript, page 95. Plaintiff also admitted at the deposition that not all the kitchen personnel attended the September 15, 2005, *albeit* he did not know why. *Id.* at pages 95–96. The Court finds that this is an isolated event; his supervisor has a valid non-discriminatory reason for asking plaintiff to remain working, as others also did, instead of attending the meeting; and, plaintiff has presented no evidence to show that this incident constitutes a discriminatory act due to plaintiff's impairment of epilepsy.

Lastly, plaintiff Ramos–Echevarría admitted at the April 17, 2008 deposition that he has never been the subject of discriminatory comments regarding his medical condition, at his place of work. *See* Docket No. 24, Plaintiff's April 17, 20008 deposition transcript at page 99.

The Court adopts the findings made by the Magistrate Judge in the *Report and Recommendation,* Docket No. 55, pages 8–14, particularly n. 4:

Because the Court concludes that plaintiff has not established a genuine issue of material fact with regard to the threshold issue of disability under the ADA [imposing him to work], it is unnecessary to consider the merits of any

disparate impact claim on the basis of disability discrimination. In addition, the record is devoid of any evidence in support of certain allegations of the complaint, such as that Pichis' owner "clearly made the statement that he would not authorize plaintiff to work full time, 40 hours because of this medical condition, epilepsy;" "[defendant refused to evaluate the performance of plaintiff;" and plaintiff "has been in a hostile work environment." (Docket No. 1 at ¶¶ 14, 16, and 17). Actually, plaintiff himself acknowledges that no discriminatory comments regarding his medical condition were made at work. (Docket No. 24, Attachment 2, 99 at lines 10–12). Plaintiffs' objections are denied.

### Claims under Title VII and 42 U.S.C. § 1983

■ As stated by the Magistrate Judge in the *Report and Recommendation:* "Title VII of the Civil Rights Act of 1964 only protects against discrimination on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e–2(a)." Docket No. 55, page 14. "Title 42, United States Code, Section 1983 provides a civil action for the deprivation of 'rights created by the Constitution and laws of the United States' by those acting under color of state law." (Internal citations omitted). *See* Docket No. 55, page 14. "In the present case, plaintiff has claimed discrimination only on the basis of disability." *Id.* Moreover, plaintiff has failed to allege any specific violation under the United States Constitution by a person acting under color of law.

■ Lastly, it is well settled that "Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages." *M.M.R.-Z., et al. v. Commonwealth of Puerto Rico, et al.,* 528 F.3d 9, 13, n. 3 (1st Cir.2008). In view of the foregoing, the Court adopts the findings warranting dismissal as to the claims under Title VII, and 42 U.S.C. § 1983 made by the Magistrate Judge in the *Report and Recommendation* (Docket No. 55, pages 14–15).

### 2008 ADA Amendments Act

■ Plaintiffs object to the findings made by the Magistrate Judge under the applicability of the ADA to determine "disability," as said determination failed to consider the 2008 ADA Amendments Act. The Court disagrees with plaintiffs' objections, as it is black letter law that the amendments came into effect on January 1, 2009, and the same are not to be applied retroactively, as all the operative facts in the instant case took place prior to January 1, 2009. *See Colón–Fontanez v. Municipality of San Juan, et al.,* 671 F.Supp.2d 300, n. 36 (D.P.R.2009). "Where Congress passes an interpretative or restorative statute, such as the ADA AA [2008 ADA Amendments Act], its 'intent to reach conduct preceding the 'corrective' amendment must clearly appear.'" *Id.,* citing *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). "The text of the ADA AA fails to make any mention of retroactivity." *Id.* "For this reason the Court holds that Congress that did not manifest a clear intent for the ADA AA to apply retroactively." *Id.* The Court notes that the instant case was filed on November 22, 2006, and much of the operative facts occurred considerably before said date, as the plaintiff had to exhaust EEOC administrative remedies. The letter of right to sue was issued by the EEOC on August 23, 2006. Hence, the case is examined under the law applicable at that time.

In view of the foregoing, plaintiffs' objections to the *Report and Recommendation* are denied.

### Conclusion

For the reasons stated above, the Court: (a) approves and adopts *in toto* the Magistrate Judge's *Report and Recommendation* (Docket No. 55), as supplemented herein; (b) *Defendant's Motion For Summary Judgment And Memorandum Of Law In Support Thereof* (Docket No. 24) is granted; (c) all federal claims under the ADA, and discrimination under Title VII are dismissed with prejudice; (d) the remaining unspecified federal claims are dismissed with prejudice; and (e) all state law claims are dismissed without prejudice.

The Court exercise of supplemental jurisdiction in a case in which there is no cause of action under a federal statute is discretionary. *See* 28 U.S.C. § 1367(a). The Court may dismiss the State actions without prejudice should the federal causes of action be dismissed. *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1176 (1st Cir.1995). The Court will not exercise supplemental jurisdiction in the instant case, as there is no actionable cause of action under a federal statute, hence, the state claims may be dismissed. Judgment to be entered accordingly.

IT IS SO ORDERED.