Orlando OLIVENCIA–DE–JESUS, et al., Plaintiffs,

v.

**PUERTO RICO ELECTRIC POWER AUTHORITY, et al., Defendants.**

Civil No. 13–1844(PAD).

United States District Court, D. Puerto Rico.

Signed Feb. 11, 2015.

Jane A. Becker–Whitaker, Jane Becker Whitaker, PSC, San Juan, PR, for Plaintiffs.

Carlos M. Aquino–Ramos, P.R. Electric Power Authority, Luis M. Rodriguez–Lopez, Guzman & Rodriguez–Lopez Law Offices, Aurea Yadira Rivera–Alvarado, Puerto Rico Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

PEDRO A. DELGADO–HERNÁNDEZ, District Judge.

Plaintiffs were suspended and terminated from their employment with the Puerto

Rico Electric Power Authority ("PREPA"). As a result, they initiated this action asserting violations of federal and Puerto Rico law, and requested a preliminary injunction ordering the employer to reinstate them in their employment pending resolution of the case (Docket No. 39). The request was referred to Magistrate Judge Marcos E. López, who issued a Report and Recommendation ("R & R") recommending that plaintiffs' request be granted in part and denied in part (Docket No. 99). Both parties filed objections to the R & R (Dockets No. 108 and 109). For the reasons explained below, the request for a preliminary injunction is DENIED in its entirety.

## I.  BACKGROUND

Plaintiffs claim that PREPA's Regional Administrator conspired with other PREPA high officials and managers as well as with the leadership of a PREPA labor union, to illegally suspend and dismiss them from their employment in one of the entity's commercial office because of their political affiliation and in violation of due process of law. One of the plaintiffs additionally asserts a compelled speech claim. The suspensions and dismissals followed an investigation of alleged payroll irregularities at the PREPA commercial office where plaintiffs worked.[1]

## II.  STANDARD OF REVIEW

A district court may refer a pending motion to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Civ. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate

judge's report. Loc. Civ. Rule 72(d). *See,* 28 U.S.C. § 636(b)(1).

■ A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Ramos–Echevarria v. Pichis, Inc.,* 698 F.Supp.2d 262, 264 (D.P.R.2010); *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*citing United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

## III.  DISCUSSION

### A.  Recommendation

After holding a hearing and conducting a thorough analysis of the applicable law, the magistrate judge recommended that plaintiffs' motion for a preliminary injunction: (1) be denied as to plaintiffs' discrimination and due process claims; and (2) be granted as to plaintiff Orlando Olivencia's compelled speech claim (Docket No. 99 at p. 43, n. 30). The Court has made an independent examination of the entire record and determines that the magistrate judge's findings pertaining to plaintiffs' political discrimination and due process claims are well supported. Thus, it adopts the magistrate judge's findings and recommendations on those matters. The determination that a preliminary injunction is warranted as to the compelled speech claim stands on a different footing.

### B.  Disposition

The compelled speech action derives from the allegation that PREPA offered to reinstate Olivencia in exchange for testimony against at least one managerial em-

---

1. The investigation revealed that some employees were arriving to work later and leav-

ing earlier than they had been indicating on their payroll reports. *Id.* at ¶ 170–173.

ployee (Docket No. 99 at p. 35).[2] Because he refused to so testify, he did not accept PREPA's offer, and was not reinstated. In his view, defendants violated his right "to refrain from providing false testimony" (Docket No. 1 at ¶ 181), which his counsel characterized during the preliminary injunction hearing as a "compelled speech claim" (Docket No. 99 at p. 33). The magistrate judge concluded that "a reasonable inference can be drawn that Olivencia was required to say things that would be unfavorable to the managers, and recommended that he be reinstated *pendente lite. Id."*

■ The First Amendment provides that state actors "shall make no law abridging freedom of speech." U.S. Const. Amend. I. Its protection is multifaceted, preventing the government from prohibiting speech, and from compelling individuals to express certain views. *United States v. United Foods, Inc.,* 533 U.S. 405, 410, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001). The "compel" dimension of this protection is known as "compelled speech." It encompasses the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration and adherence. *Agency for Intern. Development v. Alliance for Open Society Intern., Inc.,* — U.S. —, 133 S.Ct. 2321, 2327, 186 L.Ed.2d 398 (2013); *Turner Broadcasting System, Inc.*

*v. F.C.C.,* 512 U.S. 622, 641, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

The principle has been applied in a variety of contexts, such as refusal to participate in compulsory flag salute and pledge of alliance, *West Virginia State Bd. of Ed. v. Barnette,* 319 U.S. 624, 632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); refusal to allow one's property to carry messages for others, *Pacific Gas and Elec. Co. v. Public Utilities Com'n of California,* 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986), *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); refusal to reveal one's identity in distributing campaign literature, *McIntyre v. Ohio Elections Com'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); and refusal to include in a parade, a group whose message the parade's organizer does not wish to send, *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 566, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995).[3]

■ Constitutional review of government employment decisions, however, rests on different principles than review of restraints imposed by the government as sovereign. *Engquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 598, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). Government instrumentalities are charged by law with doing particular tasks, and hire employees to help do those tasks as effectively and efficiently as possible. *NASA v. Nelson,* 562

---

**2.** The offer also required Olivencia to accept the charges against him, and to return of money "stolen" as reflected on the discrepancies that the audit revealed between the attendance records (payroll forms), and the entry and exit registries kept by security guards.

**3.** Compelled speech or disclosure claims are not exclusive of the First Amendment's Speech Clause. They have also been made under the Press Clause and other constitutional provisions. *See, e.g., Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33

L.Ed.2d 626 (1972) (journalist's refusal to appear and testify before grand jury with respect to confidential sources); *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (request to enjoin enforcement of statute requiring disclosure of patients' drug-prescription information); *NAACP v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (disclosure of association's membership lists); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (privilege against self-incrimination).

U.S. 134, 131 S.Ct. 746, 759–760, 178 L.Ed.2d 667 (2011); *Engquist,* 553 U.S. at 598, 128 S.Ct. 2146. For the same reason, they are recognized far wider authority, discretion, and leeway in their dealings with citizen employees than the government is allowed when it brings its power to bear on citizens at large. *Borough of Duryea, Pa. v. Guarnieri,* —— U.S. ——, 131 S.Ct. 2488, 2497, 180 L.Ed.2d 408 (2011); *Engquist,* 553 U.S. at 598, 128 S.Ct. 2146.

▮▮▮▮. When citizens enter government service, they must accept limitations on their freedom linked to the unique nature of the government's interest in managing its administrative affairs, operations, and workforce to ensure satisfactory provision of public services. *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); *Duryea,* 131 S.Ct. at 2497, 131 S.Ct. 2488. The existence of limitations does not mean that public employees relinquish all of their First Amendment rights as citizens. *City of San Diego, Cal. v. Roe,* 543 U.S. 77, 80, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004). As long as employees invoke speech rights as citizens about matters of public concern, they must face only those restrictions appropriate for their employers to operate effectively and efficiently. *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951. Conversely, if those rights do not involve a matter of public concern, the employee has no First Amendment cause of action based on his or her employer's reaction. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951.

▮▮▮▮ Not all matters related to a government office are of public concern for First Amendment purposes. Whether they are so depends on context, content, and form. *Duryea,* 131 S.Ct. at 2501, 131 S.Ct. 2488. Public concern is not usually involved when speech rights are invoked in connection with individual workplace disputes and grievances. *Id.; Hall v. Ford,* 856 F.2d 255, 258 (D.C.Cir.1988).

▮▮▮▮ In some sense, everything that goes on in a government office or facility is of concern to the public because government personnel carry out programs that elected officials have mandated or authorized. *Duryea,* 131 S.Ct. at 2501, 131 S.Ct. 2488; *Barnes v. Small,* 840 F.2d 972, 983 (D.C.Cir.1988). But as the Supreme Court has warned, absent the most unusual of circumstances, a federal court is not the appropriate forum in which to review a personnel decision taken by a public entity in reaction to the employee's behavior. *Engquist,* 553 U.S. at 600, 128 S.Ct. 2146. The First Amendment does not empower public employees to constitutionalize ordinary employee grievances. *Garcetti,* 547 U.S. at 420, 126 S.Ct. 1951; *Engquist,* 553 U.S. at 607, 128 S.Ct. 2146.

▮▮▮▮ In line with these principles, that Olivencia was required to offer testimony against a managerial employee as part of a settlement offer in exchange to return to work, does not transform that speech into speech protected by the First Amendment any more than his rejection of PREPA's offer becomes a violation of constitutionally-protected freedom of speech. The testimony that he declined to provide was part of an offer to settle a personnel dispute, which he rejected, incidentally telling a group of union employees that no one should offer testimony against managerial employees because he possessed exculpatory documents and everyone was going to come out fine (Docket No. 99 at p. 12).

▮▮▮▮ PREPA had a legitimate interest in obtaining the testimony, as it purportedly related to managerial employees who participated in the payroll irregularities underlying plaintiffs' suspensions and terminations from employment. Its judg-

ment called for, or contemplated a settlement conditioned upon that testimony. Whether Olivencia could have provided the testimony but opted not to for (1) personal reasons, or (2) because he lacked relevant information, has no constitutional significance. That was a term to be satisfied if PREPA was to settle. A party cannot be forced to settle in terms other than those it believes will protect its interests. *Ogle v. Columbia Gas Transmission, LLC,* 2014 WL 3895500, *5 (S.D.Ohio August 8, 2014).

The First Amendment "does not require displacement of managerial discretion by judicial supervision" in determining how best to approach potential settlement dynamics in the context of this type of garden-variety workplace dispute. *Garcetti,* 547 U.S. at 443, 126 S.Ct. 1951. *See also, NASA,* 131 S.Ct. at 758 ("The Due Process Clause ... is not a guarantee against incorrect or ill-advised personnel decisions")(*quoting Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). In these circumstances, it is apparent that Olivencia has not raised a colorable compelled speech claim. The subject of his proposed testimony does not involve a matter of public interest within the scope of the First Amendment.

## IV. CONCLUSION

In view of the foregoing, plaintiffs' motion for a preliminary injunction at Docket No. 39 is DENIED.

**SO ORDERED.**